Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3523 | **DATE** | 4/6/2000 |
| **CASE TITLE** | USA vs. Dontay Banks | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We deny Banks' amended petition for habeas corpus. The status hearing set for 4/28/00 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 1 2 2000 | |
| | Notified counsel by telephone. | | date docketed | 61 |
| | Docketing to mail notices. | | S.B. | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/6/2000 | |
| | | 00 APR 10 AM 8:55 | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONTAY BANKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 97 C 3523 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

DOCKETED
APR 12 2000

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Petitioner Dontay Banks and six co-defendants were convicted on December 1, 1993, of various narcotics related offenses for their participation in a conspiracy to distribute cocaine and cocaine base ("crack") in Chicago from the fall of 1991 through May 1993.[1] Banks, who was identified as the primary organizer of the conspiracy, was convicted of 24 counts, including knowing possession of cocaine with intent to distribute, conspiring to possess with intent to distribute in excess of 50 grams of mixtures containing crack and multi-kilogram quantities of mixtures containing cocaine, and using the telephone to facilitate drug trafficking offenses. On July 14, 1994, this Court sentenced Banks to a term of life imprisonment.

The Seventh Circuit affirmed Banks' conviction and sentence, *see United States v. Banks*, 78 F.3d 1190 (7th Cir. 1996), and the Supreme Court denied certiorari later that year. In May 1997, Banks filed a petition for habeas corpus in this Court pursuant to 28

---

[1] For a fuller description of the facts underlying Banks' conviction, see *United States v. Banks*, 78 F.3d 1190 (7th Cir. 1996), disposing of Banks' appeal.

U.S.C. §2255, which we denied because all of his claims were either previously decided by the Seventh Circuit on appeal or were procedurally defaulted. Banks then fired his trial and appellate attorney James Cutrone and filed a *pro se* motion to amend his §2255 petition and motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), both of which we denied in January 1998. Banks claimed that Cutrone had been ineffective because he told Banks that he could raise the same issues on habeas that he raised on direct appeal, and that therefore his collateral proceedings were tainted. In February 1999, Banks asked the Seventh Circuit for leave to file a second and successive §2255 petition. The court denied this request because Banks did not proffer any new evidence nor demonstrate that the proceedings below were clearly erroneous, but acknowledged that Banks' claim that his attorney did not give him good advice prior to filing his first §2255 petition might constitute grounds for relief under Rule 60(b). The court concluded that "the district court has authority to reopen Banks' habeas case only if it finds that counsel's conduct affected the integrity of its own proceedings." *Banks v. United States*, 167 F.3d 1082, 1083 (7th Cir. 1999). Banks came back to us with a Rule 60(b) motion in August 1999, to which the government did not object. We thus granted Banks leave to file the amended §2255 petition before us today, and he did so in December 1999.

Banks' amended petition raises four claims of ineffective assistance of counsel. Because Banks did not raise any of these issues on his direct appeal, the claims are procedurally defaulted from review unless Banks shows both cause for his failure to raise them on appeal and actual prejudice from this failure, or that our refusal to consider his claims would result in a "fundamental miscarriage of justice." *Steward v. Gilmore,* 80 F.3d 1205, 1212 (7th Cir. 1996). Banks has good cause for failing to raise on appeal the issue

2

of ineffective assistance of trial counsel, since he was represented by the same attorney at trial and in his direct appeal. See *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir. 1991) ("trial counsel . . . can hardly be expected to challenge on appeal his own effectiveness at trial"). However, whether or not Banks can show actual prejudice depends on whether or not his claims would have succeeded, because his burden is to demonstrate "not merely that the [alleged] errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. 478, 494 (1986). We therefore proceed to examine the merits of Banks' claims, keeping in mind that "[o]ur task is 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the trial" while indulging the 'strong presumption that . . . the challenged action might be considered sound trial strategy.'" *United States v. Figueroa,* 15 F.3d 706, 706 (7th Cir. 1994) (quoting *Strickland v. Washington,* 466 U.S. 668, 689 (1984)). We must look at Cutrone's decisions through a highly deferential lens, "presuming reasonable judgment and declining to second guess strategic choices," and determine whether his performance "fell below an objective standard of reasonableness," *United States v. Cooke,* 110 F.3d 1288, 1299 (7th Cir. 1997), and if so whether Banks suffered prejudice as a result, "in other words, [whether] but for his trial attorney's inadequate performance the result of the proceedings would have been different." *United States v. Jackson,* 103 F.3d 561, 573 (7th Cir. 1996).

Banks first argues that his trial counsel was ineffective for failing to request that the jury be given special verdict forms requiring jury members to specify which controlled substance they found to be the object of the conspiracy: cocaine, crack or both.

3

According to Banks, the general verdict forms given to the jury (with which the jury could find Banks either guilty or not guilty "as charged in the indictment") made it impossible for the Judge, for sentencing purposes, to know which drugs the jury found Banks to have been trafficking. This is significant because the Sentencing Guidelines proscribe much harsher sentences for crack-related offenses than for those involving cocaine. See *United States v. Adams*, 125 F.3d 586, 590 (7th Cir. 1997) (examining Guidelines and observing sentencing enhancement effect that "possession of one ounce of crack receives the same sentence as possession of 100 ounces of powder cocaine").

We do not think it unreasonable that Cutrone failed to request a special verdict form at trial, because, as the Supreme Court recently explained, in these types of cases the Sentencing Guidelines instruct the *Judge* "to determine both the amount and kind of 'controlled substances' for which a defendant should be held accountable – and then to impose a sentence that varies depending on amount and kind," regardless of the jury's actual or assumed beliefs about the conspiracy. See *Edwards v. United States*, 523 U.S. 511, 513-14 (1998). The *Edwards* petitioners were charged with conspiring to possess with intent to distribute mixtures containing both cocaine and crack, but the trial court instructed the jury that the government's burden was to prove that the conspiracy involved cocaine *or* crack. Using a general verdict form, the jury found the defendants guilty, and the judge sentenced them "based on his finding that each petitioner's illegal conduct had involved both cocaine *and* crack." *Id.* at 513 (emphasis added). The Court found this to be permissible because the Guidelines direct sentencing judges in drug conspiracy cases to take into account all of a defendant's "relevant conduct," including both the offense for

4

which the jury convicted the defendant and any other conduct that the Judge finds to be part of the same scheme or plan as the offense of conviction. *Id.* at 515.[2]

Whether Cutrone's failure to raise this issue at trial represents sound decisionmaking or unprofessional error, Banks fails the prejudice prong of the *Strickland* test, as he does not prove that the result of his case would have been any different had a special verdict request been made. The argument that Banks propounds before us today – that his sentence was improper because the jury's verdict on which it was based was ambiguous since it was delivered by a general rather than special verdict form – is not meaningfully different from the arguments he made before the court of appeals. There, he argued that "the language of the indictment, when combined with the general verdict, result[ed] in an ambiguity with respect to the objects of the conspiracy;" that "[w]ithout a special verdict . . . the district court could not have known upon which object of the conspiracy the jury convicted," and that "[w]ithout such knowledge, the district court erred in assuming that the jury found a conspiracy to distribute cocaine base – the most serious of the potential conspiratorial objectives – and thus erred in sentencing the defendants on the basis of that assumption." *Banks,* 78 F.3d at 1201. But the Seventh Circuit rejected Banks' contentions that the jury's verdict in his case was impermissibly ambiguous. The court of appeals found the indictment to be unambiguous because it was phrased in the conjunctive rather than the disjunctive – charging the defendants with both possession with intent to distribute and distribution of both cocaine base *and* cocaine, *and* use of a communication facility – "clearly requir[ing] the jury to find that both objectives and both

---

[2] Also, although we do not rely on this for our holding, according to the Government's assessment of Banks' presentence report, Banks would have been eligible for a sentence of life imprisonment even based solely on his conviction for trafficking powder cocaine, given the quantities of that drug attributed to him.

5

drugs were involved in the conspiracy." *Banks*, 78 F.3d at 1203. The court noted that the district court's "instructions to the jury reiterated the conjunctive nature of the indictment," so the conviction returned could only be supported by a finding that the conspiracy involved both objects and both drugs, since juries are presumed to follow their instructions. *Id.* at 1203-04. Finally, the court of appeals determined that there was adequate evidence in the record from which a reasonable jury could have concluded that Banks conspired to distribute not only cocaine but also crack, so "the district court did not err in using a conviction for conspiracy to distribute crack cocaine in its sentencing determinations." *Id.* at 1204.

Banks next alleges that his trial counsel was ineffective for failing to challenge the sufficiency of his indictment. Specifically, Banks contends that Count I of his indictment failed to charge him with a federal offense because it charged him with conspiring *to attempt* to possess and distribute and to use a telephone in the course of such conduct, while §§ 841 and 846 of the U.S. Code do not authorize conspiracy-to-attempt prosecutions. But we think that Banks' reading of the indictment is simply wrong. Count I of the indictment charged that Banks and the others

> did conspire with each other, and with others . . . knowingly and intentionally to possess with intent to distribute and to distribute in excess of 50 grams of mixtures containing cocaine base and multi-kilogram quantities of mixtures containing cocaine . . . in violation of [21 U.S.C. §841(a)(1)]; and knowingly and intentionally to use and cause to be used communication facilities, namely, telephones, in committing, causing and facilitating the commission of offenses in violation of [21 U.S.C. §§841(a)(1) and 846], namely, the unlawful possession with intent to distribute and the unlawful distribution of cocaine base and cocaine, and attempting and conspiring to commit those offenses, which are felonies, in violation of [21 U.S.C. §843(b)].

*Banks*, 78 F.3d at 1201. We agree with the Government that the word "attempting" as it appears at the end of Count I does not enumerate yet another object of the conspiracy, but

6

merely refers to one particular type of felony on which a telephone count may be based – that of using a telephone to attempt to commit certain felonies. Section 843 prohibits the use of telephones in committing, causing, or facilitating any acts that constitute a felony under of subchapters I or II of Title 21, and subchapter I includes §846, which states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Banks' indictment tracks the language of these statutes, and we interpret the indictment as charging Banks with conspiring to possess crack and cocaine with the intent to distribute, with conspiring to distribute crack and cocaine, and with attempting *and* conspiring to use the telephones in doing so, not with conspiring to attempt to commit these offenses. Banks cannot show that he was prejudiced by his attorney's failure to challenge the sufficiency of his indictment, and we cannot conclude that his trial counsel was ineffective in that regard.

Banks also argues that his counsel was ineffective for failing to challenge, at his sentencing, the disparity between his sentence and those of other defendants in related cases. While Banks received a sentence of life imprisonment, Carneil Simmons received 140 months, L.C. Godfrey received 112 months, and James Woods received only 60 months. Banks contends that the downward departures made for those defendants were unjustified – although he does not explain why – and argues that his sentence should be reconsidered in light of the less severe penalties imposed on the others. But Simmons, Godfrey, and Woods pled guilty to drug trafficking charges pursuant to plea agreements by which they agreed to cooperate with the Government and provide truthful testimony against Banks at his trial. The Government moved for a downward departure from the

7

statutory minimum sentence and applicable Guidelines range in those cases in light of those defendants' agreements to provide substantial assistance to the government.³ While Banks cites *United States v. Meza*, 127 F.3d 545 (7th Cir. 1996), in support of his argument, that case actually supports the Government's position. In *Meza*, the Seventh Circuit rejected the defendant's argument that the district court should have departed downward from the applicable guidelines range in setting his sentence because it did so for his coconspirators. *Meza*, 127 F.3d at 550. As in this case, the coconspirators in *Meza* provided substantial assistance to the Government, but the defendant refused to do so. The court found that "a disparity between coconspirators' sentences that results from a downward departure for some, but not all, of the coconspirators for cooperating with the Government is not a valid basis for downward departure for the non-cooperating conspirator." *Id.* at 546.

Finally, Banks argues that Cutrone's representation on direct appeal was ineffective, because "the issues regarding the special verdict form, sufficiency of the indictment and sentencing disparity (had they been properly raised in trial and on direct appeal would have had a far stronger chance of success on appeal than the issues raised by counsel." According to Banks, his counsel raised only frivolous issues on appeal and "forfeited 'dead-bang winners.'" Banks does not provide any explanation as to why the issues Cutrone argued on appeal were frivolous. Nor did the Seventh Circuit declare them to be so; to the contrary, it carefully considered and disposed of the various arguments in an 18-page published opinion. Although Banks appears to argue that Cutrone raised certain claims

---

³ Furthermore, both Simmons' and Godfrey's convictions were based on charges of trafficking powder cocaine only, not crack – which, as we observed above, carries more severe penalties under the Guidelines.

at the expense of others, "[o]ne of the principal functions of appellate counsel is winnowing the potential claims so that the court may focus on those with the best prospects," not to present every possible non-frivolous claim." *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989). We cannot second guess Cutrone's strategic choices regarding what issues were most likely to succeed on direct appeal – and, in fact, we found today that the issues that Banks says Cutrone should have raised lack merit. Therefore, we conclude that Cutrone did not act "outside the wide range of professionally competent assistance" in failing to raise them on direct appeal. *Strickland*, 466 U.S. at 690.

Because Banks has not demonstrated both cause *and* actual prejudice – in other words, because he has not shown that the ineffective assistance alleged in his defaulted claims "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," *Murray*, 477 U.S. at 494 – his claims remain procedurally defaulted. Thus, we are barred from reviewing them on habeas. And, as the above analysis demonstrates, even if we were to consider the merits of Banks' claims, he would not be entitled to relief. We therefore deny Banks' amended petition for habeas corpus.[4] It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 4/6/2000

---

[4] Although Banks has not yet requested a certificate of appealability from this Court, we have determined that his claims, for the reasons provided herein, are entirely without merit, so we conclude that our decision is not "debatable among jurists of reason." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). Therefore, if Banks decides to pursue a certificate of appealability, he should proceed directly to the Court of Appeals. *See* Fed. R. App. P. 22(b); 7th Cir. R. 22.1.